IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Jay Lamar McClellan, | ) | C/A No.: 1:12-3414-JMC-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Lavern Cohen, Warden, Ridgeland CI; Dr. NFN Amonitti, Ridgeland CI; Dr. NFN Drago, KRCI; E. Simmons, R.N.; Nurse Karen Tuten, KRCI; and Various John and Jane Does,[1] sued in their official capacities for declaratory and injunctive relief and in their individual capacities for damages, | ) | |
| Defendants. | ) | |

Plaintiff Jay Lamar McClellan is serving a nineteen-year sentence for homicide by child abuse and is currently incarcerated at Kershaw Correctional Institution ("KRCI"), a facility of the South Carolina Department of Corrections ("SCDC"). He has also been previously housed at Ridgeland Correctional Institution ("RCI"), Lee Correctional Institution, and Evans Correctional Institution, among other facilities. Proceeding pro se and in forma pauperis, Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while house at RCI and KRCI. Plaintiff names as defendants the following SCDC employees: RCI Warden Lavern Cohen, Dr. Amonitti of

---

[1] Plaintiff has not properly named or identified any John or Jane Does, or served them with process in this case. Plaintiff was previously warned that failure to effect service could result in dismissal. [Entry #22 at 2–3]. The undersigned therefore recommends "Various John and Jane Does" be dismissed for failure to effect service of process pursuant to Fed. R. Civ. P. 4(m).

RCI, Dr. Drago of KRCI, Nurse Simmons of RCI, Nurse Karen Tuten of KRCI (collectively "Defendants").

This matter comes before the court on (1) Defendants' motion for summary judgment [Entry #40] and (2) Plaintiff's motion for summary judgment [Entry #43]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #41]. These motions having been fully briefed [Entry #43, #45], they are ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

I.  Factual Background

Plaintiff's factual allegations

Plaintiff alleges that in 2001,[2] he injured his back while unloading a truck as an inmate cafeteria worker at Lee Correctional Institution. [Entry #8 at 2]. He claims that he was seen by sick call after the injury, but was only given ibuprofen and his injury became worse over the years. *Id*. Plaintiff alleges that on an unspecified date while incarcerated at

---

[2] Plaintiff's amended complaint and responses to summary judgment indicate this incident occurred in 2001 [Entry #8, #43, #45], but Plaintiff's affidavit indicates it occurred in 2011 [Entry #43-1, #45-2]. After considering Plaintiff's other allegations, it appears that the year 2011 in the affidavits was a scrivener's error.

Evans Correctional Institution, he was sent for an MRI and was informed approximately two weeks later that the MRI showed that he suffered from four herniated discs in his lower back. *Id*. Plaintiff was prescribed medication. *Id*.

Plaintiff alleges that in 2011, while incarcerated at RCI, he slipped in the shower. *Id*. at 3. Plaintiff asserts that he was seen by medical over 25 times while at RCI and he had another MRI. *Id*. According to Plaintiff, he was sent to Kirkland Correctional Institution on April 2, 2012, to have x-rays of his back taken, but he was never told the results of the x-rays. Plaintiff further alleges he was taken to see a neurologist twice, but was not informed of the results. *Id*. Plaintiff claims that his request for another MRI was denied. *Id*. He transferred back to RCI and was placed on medication. *Id*.

Plaintiff was transferred to KRCI on October 9, 2012. Dr. Drago informed Plaintiff that all he could do was give Plaintiff medication for the pain. *Id*. Plaintiff alleges he is in serious pain and that he has requested surgery. *Id*.

Plaintiff's Medical Records

Plaintiff's SCDC medical records reveal the following related to his back. Plaintiff was first seen on November 26, 2001, for complaints of back pain that began after he bent down to hit the ball while playing handball on November 21, 2001, at Lee Correctional Institution. [Entry #40-3 at 9–10]. He was given aspirin and told to refrain from strenuous activities. *Id*. Although there are years of mental health treatment, no further back-related complaints are noted until January 25, 2006, when Plaintiff complained of shooting pains starting at his buttock and running down his leg. *Id*. at 28. He was treated with medication, exercises, and heat to the area. *Id*. He next complained

of lower back pain almost two years later, on December 11, 2007, and he was treated. *Id.* at 31.

On May 21, 2009, Plaintiff claimed he had a herniated disk and requested to see a doctor. *Id.* at 33. Plaintiff was examined, treated, and placed on the list for a doctor's visit. On September 16, 2009, Plaintiff informed a doctor at Evans Correctional Institution that he injured his lower back six months prior playing handball. *Id.* at 34. He told the doctor that he stepped off the top bunk three months prior, which made it worse. *Id.* The doctor prescribed medication and scheduled an MRI. The MRI revealed a suspected transitional vertebral body at the lumbosacral junction, degenerative disc bulge at L4-5, with foraminal encroachment and mild changes with a slight bulge at L1-2 and L3-4, without foraminal encroachment. *Id.* The results were forwarded to the doctor for review and the doctor recommended a consult with a neurosurgeon. *Id.* Plaintiff was not approved for a consult with a neurosurgeon. *Id.* at 35.

As a new intake at RCI on January 5, 2011, Plaintiff reported chronic back pain, but was not taking medication for it. *Id.* at 36. On February 3, 2011, Plaintiff requested that his work restrictions be removed and indicated his back problems had resolved. *Id.* at 36. On September 23, 2011, Plaintiff again complained of lower back pain and was treated. *Id.* at 37. Plaintiff was treated again for the same complaints on October 17, 2011, and scheduled to see the doctor. *Id.* Plaintiff was seen by a doctor on October 20, 2011, and was prescribed a new pain medication. *Id.* In the next month, Plaintiff requested a greater dose of medicine. *Id.* at 38–39. On January 3, 2012, he was examined by the doctor and prescribed additional pain medication. *Id.* at 39–40. He was examined

and his medication was adjusted on January 30, 2012 and February 27, 2012. *Id*. at 40–41.

On March 9, 2012, Plaintiff saw Dr. Amonitti, who commented that Plaintiff would probably need back surgery at some point. *Id*. at 42. On March 28, 2012, Plaintiff reported that the pain had gotten worse and he requested another x-ray of his spine, which was granted. *Id*. The x-rays showed degenerative disc disease at L5-S1 and mild levoscoliosis. *Id*. at 43. Dr. Amonitti requested a neurological consult, which was approved on April 20, 2012. *Id*. at 43–44. The neurologist suggested treatment with neurotin, which was ordered for Plaintiff. *Id*. at 44.

Plaintiff was seen by Dr. Amonitti in July and August 2012 for increased back pain. *Id*. at 48–50. He had a neurologist appointment in August 2012 and was approved for an MRI and an EMG test, although the results of these tests are not included in Plaintiff's medical records. *Id*. He requested surgery on August 7, 2012. Dr. Amonitti indicated that Plaintiff's condition was not amenable to surgery, but he increased Plaintiff's medication. *Id*. at 49–50. Plaintiff requested another increase in his medication on August 21, 2012, but medical indicated that he was on the maximum dose. *Id*. at 51. His medical records contain a note on September 21, 2012, indicating that his recent MRI showed no change from the 2009 MRI. *Id*. at 52.

Plaintiff next requested sick call for his back pain on November 29, 2012. *Id*. at 54. Dr. Drago examined him the following day and adjusted his medication. *Id*. at 55. Dr. Drago saw him again on December 21, 2012, and indicated that he "may need neurosurg." *Id*. at 56. He was approved for a neurosurgery consult on January 24, 2013,

but it does not appear from the record provided that he was ever scheduled for this appointment. *Id*. at 57–58. On April 17, 2013, Dr. Thomas Byrne noted that back surgery is not medically necessary for Plaintiff, and SCDC does not provide back surgery to inmates unless medically necessary. *Id*. at 59.

II. Discussion

    A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs because he is in constant pain and they have not provided him with back surgery. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was
7

careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs. Plaintiff contends that he should receive back surgery. However, SCDC medical professionals have determined, after two MRIs, two x-rays, consultations with outside doctors, and regular treatment by SCDC doctors and medical staff, that back surgery is not medically necessary for him. Defendants have treated his pain with appropriate medications and continue to do so. While Plaintiff may disagree with the

<blockquote style="hidden">
</blockquote>

<blockquote>
</blockquote>

8

decision that he does need back surgery, he has not shown that his constitutional rights were violated. Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975). Therefore, the undersigned recommends Defendants be granted summary judgment and Plaintiff be denied summary judgment with regard to his claim for deliberate indifference to his serious medical needs.

To the extent Plaintiff alleges Defendants' act or omissions constituted negligence or malpractice, such claims are insufficient to state a claim pursuant to § 1983. Plaintiff has also failed to bring a state-law claim of medical malpractice, as he failed to file a notice of intent to file suit and an expert affidavit as required by S.C. Code Ann. § 15–79–125.

Although Plaintiff asserts claims for Fourteenth Amendment due process and equal protection violations, Plaintiff does not allege any facts in support of these claims. Therefore, these causes of actions are also unavailing for Plaintiff.

III.   Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the district judge grant Defendants' motion for summary judgment [Entry #40] and deny Plaintiff's motion for summary judgment. [Entry #43].³

IT IS SO RECOMMENDED.

October 30, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

³ If the district judge accepts this recommendation, Plaintiff's motion to be examined by an outside doctor pursuant to Fed. R. Civ. P. 35 [Entry #34] should be denied as moot. The undersigned notes that Plaintiff has given no indication that he is able to pay for such examination, and the moving party must bear the cost of the examination. *Eckmyre v. Lambert*, C/A No. 87–222–O, 1988 WL 573858, at *1 (D.Kan. Sept. 6, 1988) (noting that the moving party bears the cost of the examination and the party being examined bears all other costs); *accord Swain v. Doe*, C/A No. 3:04CV1020 (SRU), 2007 WL 5529401 (D.Conn. Aug. 21, 2007); *Muhammad v. Wright*, C/A No. 08–CV–473(Sr), 2011 WL 1458064 (W.D.N.Y. April 15, 2011); *see also Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997) (Rule 35 motion not properly used to obtain medical care or to complain of deliberate indifference to an inmate's medical needs). If Plaintiff can pay for an outside examination, he may request an examination from prison officials at any time and need not seek such relief from through court.

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).